United States District Court
Southern District of Texas
**ENTERED**
November 24, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Vonda-Kay Johnson, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:26-cv-05678 |
| Walmart Inc., | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

This negligence action arises from an auto accident while Plaintiff Vonda-Kay Johnson was driving Defendant Walmart, Inc.'s vehicle. Dkt. 1-2 at 6. Walmart filed a motion to compel arbitration and stay the case. Dkt. 9. After carefully considering the motion, Johnson's response, Dkt. 10, Walmart's reply, Dkt. 14, Johnson's sur-reply, Dkt. 18, and the applicable law, the Court grants Walmart's motion to compel arbitration.

**Background**

Johnson began working for Walmart on June 1, 2016. Dkt. 10 at 16 (Johnson Decl.). She serves as a Walmart InHome Delivery Associate at a Houston-area store. Dkt. 10 at 18; Dkt. 9-5 at 1. When Johnson was first hired, Walmart was a non-subscriber to the Texas Workers' Compensation

insurance program. Dkt. 9-1 at 1. Instead of that program, Walmart had a Texas Injury Care Benefit Plan ("the Plan"). *Id.*

Walmart has a computer-based learning module ("CBL") for associates to complete training on the Plan. Dkt. 9 at 4; Dkt. 9-5 at 1. The CBL provides a summary about the Plan and its "Mandatory Arbitration Process." Dkt. 9-2 at 21-26; *see also* Dkt. 9-4. According to Walmart, Johnson completed the Plan CBL each year from 2019 to 2026. Dkt. 9-6 at 3-4.

The Plan covers certain on-the-job injuries and outlines procedures for reporting an injury. Dkt. 9-3 at 10, 14-17. After an on-the-job injury is reported to Walmart, the Plan provides for certain medical benefits. Dkt. 9-3 at 18-21. Among other things, Walmart can pay for "Wage Replacement Benefits" and medical treatment before later denying coverage. Dkt. 9-3 at 22.

Contained within the Plan is an arbitration provision that covers "any legal or equitable claim by or with respect to an Associate for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma" that includes, but is not limited to, "claims of negligence or gross negligence[,]" for "emotional distress," and for "violation of any other noncriminal federal, state" or other law "in connection with a job-related injury ...." Dkt. 9-3 at 55. The Plan also grants the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement ...." *Id.* at 58.

As an InHome Delivery Associate, Johnson reviews, prepares, and delivers orders made by Walmart's customers in residential locations. Dkt. 14-2 at 1. Although she observed that merchandise had been shipped from other states, Dkt. 10 at 18, Johnson's role was limited to locating and gathering merchandise inside the store to fulfill customers' orders. Dkt. 14-1 at 3; Dkt. 14-2 at 1. If an item was out of stock, she would substitute it with another item from within the store. Dkt. 14-2 at 1.

Johnson drove a Walmart vehicle when delivering packages. Dkt. 14-2 at 1. She also assisted customers with fulfillment procedures and helped load products in and out of the vehicle into customers' homes. *Id.*

On May 6, 2024, Johnson was involved in an accident while delivering orders. Dkt. 1-2 at 6. According to Johnson, she had been turning left at an intersection when a driver ran a red light and struck her car. *Id.*

Johnson brought a negligence claim against Walmart in state court arising from the accident. *Id.* at 6-8. Walmart timely removed this action based on diversity jurisdiction, Dkt. 1, and moved to compel arbitration, Dkt. 9. Johnson responded, Dkt. 10, and Walmart replied, Dkt. 14. Johnson also sought and was granted leave to file a sur-reply. Dkt. 17 (granting leave); Dkt. 18 (sur-reply). The motion is ripe for resolution.

## Legal Standard

Courts conduct a two-step inquiry when resolving a motion to compel arbitration under the Federal Arbitration Act ("FAA"). The first question is whether the parties agreed to arbitrate their dispute. *See OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam). That inquiry asks both "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quotation omitted).

For the second step, courts determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 446. That determination takes into account the FAA's requirement that courts "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

## Analysis

Walmart seeks to compel arbitration based on the arbitration provision within the Plan. Dkt. 9 at 6-8. Johnson, however, maintains that she did not assent to the Plan, which would negate the existence of a valid agreement to arbitrate. The parties principally debate whether there is conclusive evidence that Johnson electronically acknowledged, and thus agreed to, the arbitration provision through Walmart's CBL module for the Plan. But Walmart

alternatively argues that Johnson agreed to the arbitration provision by accepting benefits under the Plan. Dkt. 14 at 10.

Because the Court concludes that Johnson knowingly received substantial benefits under the Plan, Johnson cannot avoid her obligation to arbitrate her claims pursuant to the Plan. Johnson's duties also do not fall within a specific exemption for interstate transportation workers under the Federal Arbitration Act ("FAA"). And there is no dispute that Johnson's claims fall squarely within the scope of the arbitration provision. The parties therefore must arbitrate this dispute.

## I. <u>Evidentiary objections</u>

As a preliminary matter, the parties raise objections to certain evidence. The relevant objections here relate to Kimberly Mack's, Lindsey Labar's and Johnson's declarations. All objections are overruled.

Johnson contends that Mack, who was not the manager of the store where Johnson worked, lacks personal knowledge of Johnson's job duties. Dkt. 18 at 3. But Mack's testimony is amply supported by the nature of her managerial position. Dkt. 14-1 at 1, 2; *see Yanez v. Dish Network, L.L.C.*, 2021 WL 4691909, at *6 (S.D. Tex. Apr. 23, 2021) ("Courts can reasonably infer an employee's personal knowledge based on the nature of the position they hold within the company") (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)); *see also Hamilton v. Trover Sols., Inc.*, 104 F. App'x 942, 944

(5th Cir. 2004) ("[A] manager of an organization can glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records."). Johnson's objection to Mack's declaration is overruled.

Johnson also complains that Labar's declaration omits certain information relating to Johnson's claim under the Plan. *See* Dkt. 18 at 6. That misses the import of Labar's declaration, which certifies certain documents as business records under Federal Rule of Evidence 803(6). Labar's stated role as Senior Manager for Claims Management in Workers' Compensation is enough to demonstrate her personal knowledge of those facts. *See* Dkt. 14-3 at 1. And her stated familiarity with the records and how they are maintained in the ordinary course of business supplies the foundation to establish that Walmart's claim payment history and benefits determination letter qualify as business records. *See id.* Johnson's objection is overruled.

For its part, Walmart objects to Johnson's anecdote in paragraph five—describing an alteration to an unrelated coaching document—to the extent that Johnson attempts to suggest that someone else could have accessed the CBL system and changed her records using her credentials. Dkt. 14 at 6-7 (citing Dkt. 10 at 17). This objection is moot because it has no bearing on the Court's analysis of the issues *infra*.

Walmart's other objection misunderstands what Johnson's declaration says. *See* Dkt. 14 at 7 (objecting to Dkt. 10 at 18 ¶ 10, second sentence). The challenged sentence merely concedes that Johnson lacks access to Walmart's "supply-chain records showing how the goods moved ...." Dkt. 10 at 18. Because there is nothing objectionable about that testimony, Walmart's objection is overruled.

## II. <u>**Johnson must arbitrate her claims.**</u>

As noted, Johnson does not dispute that her claims fall within the scope of the Plan's arbitration provision.[1] Rather, she disputes the threshold question of whether she is bound to arbitrate those claims, either because she electronically acknowledged and assented to the Plan or has accepted benefits under it such that she should be estopped from avoiding its arbitration requirement. Johnson also maintains that she qualifies for an FAA exemption that applies to interstate transportation workers.

As Walmart argues, and the Court agrees, direct benefits estoppel precludes Johnson from avoiding arbitration. Johnson's cited FAA exemption does not apply to her purely local work. The Court therefore grants Walmart's motion to compel arbitration.

[1] Regardless, the Plan also includes a clause granting the arbitrator "exclusive authority" to determine whether the arbitration agreement applies. *See* Dkt. 9-3 at 58, 67. That delegation clause reserves arbitrability issues for the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68, 71 (2019).

### A. Johnson is estopped from avoiding the arbitration provision in the Plan.

As one of its contentions, Walmart argues that Johnson is bound to arbitrate because she accepted benefits under the Plan. *See* Dkt. 14 at 10. Johnson responds that she did not knowingly accept any benefits under the Plan. Dkt. 18 at 5-7. Her own evidence reflects the opposite.

The Plan covers certain injuries arising from an "accident" as defined by the Plan. Dkt. 9-3 at 14. Once an injury is timely reported, the Plan provides medical benefits for treating the injury. Dkt. 9-3 18-21. The Plan also permits interim payments for medical treatment and "Wage Replacement Benefits" even before it is determined whether the injury is covered. Dkt. 9-3 at 22. The Plan emphasizes that "[a]ny actual payment of benefits under this Plan to or with respect to an Associate shall serve as further consideration for and represent further agreement of such Associate to the provisions of this Policy." Dkt. 9-3 at 60; *see* 9-4 at 7 (summary of the Plan stating the same). Those provisions include a requirement that an Associate arbitrate "any legal or equitable claim ... for any form of physical or psychological damage, harm or death with relates to an accident," which includes "claims of negligence or gross negligence" and any "violation" of non-criminal law "in connection with a job-related injury ...." Dkt. 9-3 at 55. So the Plan itself makes clear that an

employee's acceptance of Plan benefits binds her to the arbitration provision, even if she did not sign a document affirmatively agreeing to it.

A party to an agreement may not "attempt to repudiate the arbitration clause in a contract" if they have "embraced the contract despite their non-signatory status." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (internal citation omitted). There are two ways a non-signatory can embrace a contract containing the arbitration clause: "(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* at 473; *see also In re Weekly Homes, L.P.*, 180 S.W.3d 127, 132-33 (Tex. 2005) (orig. proceeding) (applying direct benefits estoppel based on non-signatory obtaining "substantial benefits from the contract" that includes an arbitration clause). Walmart invokes the first of those avenues. *See* Dkt. 14 at 10.

To establish its direct benefits estoppel theory, Walmart must show that Johnson had "actual knowledge of the contract containing the arbitration clause." *Noble Drilling Servs., Inc.*, 620 F.3d at 473. That requires proof that (1) Johnson knew about the Plan's existence and its terms and (2) acted to "exploit" the Plan. *See IMA, Inc. v. Columbia Hosp Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 391 (5th Cir. 2021) (citing *In re Lloyd's Reg. N.*

*Am., Inc.*, 780 F.3d 283, 291 (5th Cir. 2015)). Johnson's own documents, testimony, and allegations confirm that those requirements are met.

First, the record reflects that Johnson was aware of the Plan's existence. After the accident, a claim was opened for Johnson seeking benefits under the Plan. *See* Dkt. 14-3 at 1. Johnson admitted to speaking with a Walmart claims adjuster a few days later to discuss the wage replacement payment she had received. *See* Dkt. 18 at 11. During that conversation, the claims adjuster specifically raised Walmart's Texas Injury Care Benefits Plan and explained that it provides benefits for workplace accidents instead of workers' compensation. *See* Dkt. 18 at 22.

Second, the record also shows that Johnson "exploited" the Plan's benefits. She continued to receive benefits relating to her medical treatment long after she was made aware of the Plan. *See* Dkt. 18 at 22; Dkt 14-4 at 1 (payment records reflecting Plan benefits paid from May 7, 2024 through February 21, 2025). Moreover, Johnson's complaint demonstrates she understood that she was entitled to receive certain benefits and had a right to appeal her claim under the terms of Plan. *See* Dkt. 1-2 at 7 (alleging Walmart negligently responded to her claim appeal); Dkt. 14-5 (claim determination letter discussing Johnson's engagement in the claim investigation process); *see In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d at 291-92 (plaintiff's allegations showed that it was aware that the contract existed). Johnson's continued

receipt of medical benefits and engagement in the claims process establishes that she knew of the Plan and exploited its benefits. *See Bailey v. HealthSouth Corp.*, 2017 WL 664445, at *6 (E.D. Tex. Jan. 26, 2017) (plaintiff was estopped from avoiding arbitration under an injury benefits plan because she received certain benefits and appealed the denial of others under that plan).

The only benefits Johnson denies knowingly receiving is the $437.13 in wage replacement funds. Dkt. 18 at 6. Johnson asserts that the payment was for the week she was going on a scheduled vacation between May 7-15, 2024, Dkt. 18 at 21 (transcript), and Walmart did not provide evidence clarifying what week the wage replacement was issued for. That dispute is immaterial because there is no dispute that Johnson received $15,161.81 in other Plan benefits that were paid to healthcare providers who treated her alleged injuries from the accident. Dkt. 14-3 at 1; Dkt. 14-4 at 1. Having knowingly accepted benefits under the Plan, Johnson is estopped from disputing her obligation to arbitrate as the Plan requires.

**B. Johnson is not exempt from the FAA's coverage.**

The only remaining issue is whether Johnson was exempt from the FAA's coverage under 9 U.S.C. § 1 as a "last-mile driver" engaged in interstate commerce. *See* Dkt. 10 at 18; Dkt. 14 at 11-13. Although Johnson transported goods that originated from another state, her role in handling those goods was

exclusively local. The exception applicable to interstate transportation workers therefore does not apply.

The FAA exempts employment contracts for the "class of workers engaged in foreign or interstate commerce." *See* 9 U.S.C. § 1. That provision is known as the transportation-worker exemption. To qualify for the exemption, a worker "must at least play a direct and 'necessary role in the flow of goods' across borders." *Bissonnette v. Le Page Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)). There are two parts to the inquiry. First, a court defines the "class of workers" that the individual belongs to. *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022). Second, a court determines whether the class of workers is "engaged in interstate commerce." *Id.* at 432 (referencing 9 U.S.C. § 1).

Significantly here, Fifth Circuit law holds that workers who deliver goods from local warehouses to local customers do not qualify for the exemption because they "enter the scene after the goods have already been delivered across state lines." *Id.* at 432. In the Fifth Circuit's words, when goods arrive at the local "warehouse and [are] unloaded, anyone interacting with those goods [is] no longer engaged in interstate commerce." *Id.* at 433.

*Lopez*'s description fits Johnson's work, which is purely local. As an InHome Delivery Associate, Johnson reviewed, packaged, and delivered orders placed by local residential customers. Dkt. 14-1 at 3; Dkt. 14-2 at 1. She also

received and stocked merchandise that upon arrival at the store and was bound for those customers. Dkt. 14-1 at 3; Dkt. 14-2 at 1. To prepare orders, Johnson retrieved merchandise from within the store. Dkt. 14-1 at 3.

Under *Lopez*, the goods "were no longer involved in interstate commerce" by the time Johnson dealt with them. *See Reneekyia C. Davis v. Secure Parcel Delivery Serv. LLC*, 2026 WL 3169310, at *4 (S.D. Tex. Oct. 21, 2026) (applying *Lopez* to reject Section 1's exemption for a local delivery driver). Moreover, Johnson's "customer-facing role" reinforces that her work falls outside the class of workers covered by Section 1's exemption. *See Lopez*, 47 F.4th at 433. Johnson does not qualify for the FAA's transportation-worker exemption. She must arbitrate her claims.

## Conclusion

For the forgoing reasons, it is **ORDERED** that Defendant Walmart Inc.'s motion to compel arbitration and stay the proceedings (Dkt. 9) be **GRANTED**. It is further **ORDERED** that the parties must arbitrate this dispute, and that these proceedings be **STAYED** and administratively closed pending arbitration. The parties must file a joint status report within 14 days of receiving a final arbitration award.

Signed on November 24, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge